IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| BRENDA J. PAYTON, | ) | Case No. 12 B 29448 |
| | ) | |
| Debtor. | ) | |
| | ) | |

### MEMORANDUM OF DECISION

This Chapter 13 case is before the court on two motions. The first is the debtor's motion for an extension of the automatic stay under § 362(c)(3) of the Bankruptcy Code (Title 11, U.S.C.), asserting that she filed this case in good faith. The second is the trustee's motion to dismiss, asserting that under § 109(g)(2) of the Code the debtor is ineligible for bankruptcy relief.

Because ineligibility is the only basis on which the trustee has objected to the debtor's motion, § 109(g)(2) is dispositive of both motions. This provision makes a debtor ineligible in a bankruptcy case if, in addition to other conditions, the debtor requested voluntary dismissal of a prior case "following the filing of a request for relief from the automatic stay." The meaning of this condition is the only matter in dispute. If "following" in § 109(g)(2) has a strictly temporal meaning—"later in time"—then the debtor in the present case is ineligible. But if it has a causal meaning—"as a result of"—then § 109(g)(2) does not make the debtor ineligible.

For the reasons set out below, the best reading of § 109(g)(2) uses the causal definition of "following," and so the trustee's motion will be denied and the debtor's motion granted.

## Jurisdiction

Under 28 U.S.C. § 1334(a), the federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code, but 28 U.S.C. § 157(a) allows the district courts to refer these cases to the bankruptcy judges for their districts, and the District Court for the Northern District of Illinois has made such a reference of all of its bankruptcy cases. N.D. Ill. Internal Operating Procedure 15(a). Under 28 U.S.C. § 157(b)(1), a bankruptcy judge to whom a case has been referred may enter final judgment on "core proceedings arising under" the Bankruptcy Code. Eligibility to be a debtor in a bankruptcy case arises under the Code and is therefore a matter as to which a bankruptcy judge may enter final judgment. *See In re First Assured Warranty Corp.*, 383 B.R. 502, 518 (Bankr. D. Colo. 2008).

## Factual Background

No facts relevant to the pending motions are in dispute. In March 2009, Brenda Payton filed a Chapter 13 bankruptcy case. Shortly afterward, in April, one of her creditors moved for relief from the automatic stay, seeking to repossess a car securing a loan for which Payton was liable. The motion was granted. In June, Payton dealt with the auto lender's claim by proposing a Chapter 13 plan that provided for her to surrender the car. The plan was confirmed, and Payton did

2

surrender the car, resolving the lender's claim to it. There was no further activity in the case with regard to the car loan, and no other creditor sought stay relief. For nearly three years after confirmation, Payton complied with her plan, making payments to the trustee as the plan required. But in May 2012, she voluntarily sought and obtained dismissal of the case.

In July 2012, within 180 days of the dismissal, Payton filed the current Chapter 13 case. She also filed her pending motion to extend the automatic stay, stating both that she had voluntarily dismissed the earlier case because her income had decreased to the point that she could not maintain her plan payments, and that she filed her second bankruptcy case in good faith because she had reduced her expenses enough to make payments under a new plan. The trustee did not challenge any of the grounds that Payton gave for dismissing her first case or for filing the current one, but the trustee opposed extension of the automatic stay in this case and sought dismissal, arguing that Payton was ineligible for bankruptcy relief when she filed the case. The parties submitted briefs on the question of eligibility.

## Legal Conclusions

Payton's eligibility to be a debtor in this case depends on § 109(g)(2) of the Bankruptcy Code. It provides in part:

> [N]o individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if . . . (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

3

This language prevents a person from being a debtor eligible for bankruptcy if all of the following conditions are present:

> (1) The person is an individual or a family farmer, rather than a non-agricultural corporation or other organization.
>
> (2) The person was a debtor in a prior bankruptcy case.
>
> (3) The person both sought and obtained voluntary dismissal of the prior case.
>
> (4) Both the request for and the granting of voluntary dismissal occurred during the 180 days before the filing of the person's current case.
>
> (5) The person sought and obtained the voluntary dismissal "following the filing of a request for relief from the automatic stay."

Payton's current case satisfies the first four of these conditions. The only question about her eligibility concerns the last condition. The trustee contends that Payton sought and obtained the voluntary dismissal of her prior case "following" a request for relief from the automatic stay because her request for dismissal was later than the filing of the stay relief motion. Payton replies that her voluntary dismissal was not an event "following" the stay relief motion because that motion did not cause her to seek the dismissal.

The parties' positions on the meaning of "following" in § 109(g)(2) mirror a conflict in the published decisions. Most of these decisions agree with the trustee, holding that "following" in § 109(g)(2) means only "subsequent to" or "later in time." The leading case among these "time-sequence" decisions is *In re Andersson,* 209 B.R. 76, 78 (6th Cir. BAP 1997); others are collected and discussed in Ned W. Waxman, *Judicial Follies: Ignoring the Plain Meaning of Bankruptcy Code § 109(g)(2)*,

48 Ariz. L. Rev. 149, 152-57 (2006). Another group of decisions, however, interprets "following" in § 109(g)(2) as Payton contends, holding that it means "resulting from." These "causation" decisions include *In re Durham*, 461 B.R. 139, 142 (Bankr. D. Mass. 2011)*,* which collects decisions with the same interpretation.

The dispute between the two groups can be resolved in three steps.

*First, no single meaning of "following" can be applied in every context.*

The word "following" is used as several different parts of speech. Among other possibilities, it can be a noun ("Soccer has a large following"), a verb ("They were following a fresh trail"), or—as in § 109(g)(2)—a preposition or present participle. In this last function, "following" introduces a phrase that modifies information set out in the main part of a sentence, and it indicates the relationship between the modifying phrase and the rest of the sentence. But even in this modifying capacity, "following" has several meanings, each indicating a different kind of relationship.

(a) *Time sequence.* As the trustee notes, the relationship indicated by "following" is often simply chronological. Used this way, "following" indicates that the action or time period in the main part of the sentence occurred later than an action or time period in the modifying phrase—for example, "Following their first class, the children went to their lockers," or "The Cretaceous period, following the Jurassic period, was the last one in the Mesozoic era." In examples like these, "subsequent to" can be substituted for "following" without changing the meaning of the sentence.

(b) *Compliance.* In contrast, "following" can also indicate a relationship of compliance. Used this way, "following" means that the action set out in the main

5

part of the sentence was taken in conformity with a standard set out in the modifying phrase—for example, "Following the rules of etiquette, they congratulated one another," or "Following the example of Washington, he accepted only two terms as president." This use of "following" often appears in legal writing. *See, e.g., Capitol Indem. Corp. v. Elston Self Serv. Wholesale Groceries, Inc.,* 551 F. Supp. 2d 711, 719-20 (N.D. Ill. 2008) ("[S]everal courts . . . have held that title infringement [includes] trademark infringement. . . . Following these holdings, the court believes that title infringement fairly refers to trademark infringement."), *aff'd,* 559 F.3d 616 (7th Cir. 2009). In these examples, "in compliance with" can be substituted for "following" without a change in meaning.[1]

(c) *Causation.* Finally, as Payton suggests, "following" often indicates a causal relationship: action in the main part of the sentence is a result of an event stated in the modifying phrase. Here are a few examples of "following" used in this way, all drawn from internet entries:

> 1. "Following the *Titanic* disaster, ships were refitted for increased safety." (http://en.wikipedia.org/wiki/Changes_in_safety_practices_after_the_sinking_of_the_RMS_Titanic)
>
> 2. "Following an embarrassing security breach earlier this month, business-oriented social networking site LinkedIn has been hit with a $5 million law-

---

[1] Whenever compliance with a standard is involved, a time sequence is also involved—the standard being followed necessarily comes before the compliant action. But "following" in the context of compliance does not focus on chronology, and substituting "subsequent to" for "following" distorts the meaning of the sentence. This is especially evident in a sentence stating that action was *not* taken in compliance with a standard. So for example, it would be reasonable to say: "Judge Smith, not following the ethical rules, made a large political contribution." But it would be bizarre to say: "Judge Smith, not subsequent to the ethical rules, made a large political contribution."

suit . . . ." (http://www.digitaltrends.com/social-media/linkedin-lawsuit-following-security-breach-company-hit-with-5m-suit/)

3. "Following six months of investigation, the charity believes Natural England has contravened European environmental protection legislation . . . ." (http://www.surfbirds.com/community-blogs/blog/2012/10/16/rspb-seeks-european-investigation-after-failure-to-protect-uk-wildlife-site)

4. "More than 20 Iraqi police officers were arrested and face interrogation Saturday following the escape of 19 detainees from a temporary prison in Iraq." (http://jurist.org/paperchase/2012/03/iraq-police-officers-arrested-after-detainees-escape-prison.php)

In each of these sentences, "as a result of" can be substituted for "following" with no change in meaning.[2]

All three of the meanings of "following" set out above are included in dictionary definitions. The American Heritage Dictionary, for example, sets out "following" as the present participle of "follow," which it defines in part as:

[*Sequence*] 1. To come or go after . . . .

[*Compliance*] 4. To accept the guidance or leadership of . . . . 6. To act in agreement with; obey . . . .

[*Causation*] 9. To be evident as a consequence of . . . .

---

[2] As with compliance, the causal meaning of "following" involves a time sequence—the cause necessarily takes place before its effect—but chronology is not the focus. This is obvious if the event in the modifying "following" phrase is changed to another event that took place at the same time, but lacks a causal connection. Consider the example involving the sinking of the *Titanic*. That event took place on April 15, 1912 (www.britannica.com/titanic/article-302522); just a few days earlier, on April 12, the first exhibition baseball game was played at Fenway Park (boston.redsox.mlb.com/bos/fenwaypark100/timeline.jsp?year=1912). Saying that ships were made safer "following the Titanic disaster" is reasonable. But changing the modifying clause to a non-causative event produces an unreasonable sentence, even though the chronology is identical: "Following the first exhibition game at Fenway, ships were refitted for increased safety." This modified sentence seems wrong precisely because shipbuilding would not "follow" from a ballgame.

Am. Heritage Dictionary 520 (2d college ed. 1982).  The dictionary also lists "following" as a preposition, defined as "subsequent to; after," *id.*, and its definition of "after" includes sequence ("Subsequent in time to; at a later time than"), compliance ("[I]n conformity to"), and causation "(Subsequent to and because of").  *Id.* at 85.

Both usage and dictionary definitions, then, demonstrate that a phrase introduced by "following" is not limited to setting out a time sequence.  Rather, there is no single meaning that can be assigned to "following" in a modifying phrase.  Context determines what "following" means.[3]

> *Second, in the context of § 109(g)(2), the most reasonable meaning of "following" is "as a result of."*

The examples of the uses of "following" set out above show that its meaning in a modifying phrase depends on the nature of the items in that phrase and the rest of the sentence.  Where one of the items is a time period, "following" very likely means "subsequent to."  This is true regardless of whether the time frame is in the

---

[3] The Waxman article, 48 Ariz. L. Rev. at 160, takes a different view, making this argument: "[F]ollowing is not used as a verb in § 109(g)(2), but rather as a preposition, the object of which is filing.  The only meaning for the preposition following in the most recent edition of Webster's is 'subsequent to,' . . . ."  Although the argument has been favorably cited in one published opinion, *In re Beal*, 347 B.R. 87, 91 n.3 (E.D. Wis. 2006), it is mistaken.  A present participle can take an object just as readily as a preposition, and participles are rarely given dictionary listings separate from the root form of the verb.  For example, the American Heritage Dictionary lists "refuting" as a present participle of "refute" but does not give it a separate entry.  *See* Am. Heritage Dictionary 1040.  Nevertheless, "refuting" can easily introduce a modifying phrase—for example, "The second candidate, refuting his opponent's argument, won the debate."  Moreover, as noted above, the American Heritage Dictionary states that the preposition form of "following" means "after," and includes "because of" as one of the meanings of "after."  So "subsequent to" is certainly not the only possible meaning when "following" introduces a modifying phrase.

8

modifying clause ("Following that winter, the boys played one more game of ice hockey") or in the rest of the sentence ("They had to endure gloomy weather for several days following the game."). On the other hand, where the modifying phrase contains a standard of conduct, compliance with the standard is the likely meaning of the sentence. For example, a sentence beginning "following the teaching of Gandhi" would be expected to conclude with some action taken in compliance with that teaching. But if the modifying clause and the rest of the sentence each set out a discrete action or event, rather than a time period or a standard of conduct, then a causal relationship is most likely: "Judy repainted her kitchen following the oven fire" most reasonably means that the repainting was a result of the fire, not just that it occurred later. As with the Fenway Park example set out above, n.1, if two discrete events linked by the word "following" have a temporal relationship, but not a causal one, the sentence seems wrong: "Judy repainted her kitchen following enactment of an ordinance on elevator maintenance."

Section 109(g)(2) uses "following" to establish a relationship between two discrete events: the debtor's voluntary dismissal of a bankruptcy case and a request for relief from the automatic stay; it provides for ineligibility when there is "voluntary dismissal of [a prior] case following the filing of a request for relief from the automatic stay." In this context, causation is the focus of the relationship, not simply chronology. As with the other examples, an unlikely sentence results if an obviously non-causal event is substituted for stay relief—for example, imposition of

9

ineligibility if there had been "voluntary dismissal of a prior case following a continued meeting of creditors."[4]

> *Third, the purpose of § 109(g)(2)—to avoid abuse of the automatic stay—is advanced by the causal definition of "following," but not by the sequential definition.*

If it were not plain that the context of § 109(g)(2) requires "following" to mean "as a result of"—if, in other words, there were an ambiguity—it would be appropriate to resolve the ambiguity by considering "inferences to be drawn from the text of the statute . . . and the underlying policies that animate its provisions." *United States v. Yellin (In re Weinstein)*, 272 F.3d 39, 48 (1st Cir. 2001).

The text of § 109(g)(2) clearly shows its purpose. By making a debtor ineligible for later bankruptcy relief if a request for relief from the automatic stay was filed in an earlier case, § 109(g)(2) provides protection for creditors who have sought stay relief. Without the limitation of § 109(g)(2), a debtor could—by voluntarily dismissing one case in which stay relief was sought and then filing another case— obtain repetitive automatic stays to prevent a creditor from taking action against the debtor's property. *See In re Riekena*, 456 B.R. 365, 368 (Bankr. C.D. Ill. 2011) ("It is widely acknowledged that Congress enacted section 109(g)(2) for the purpose

---

[4] A few decisions state that "subsequent to" is the plain meaning of "following" in § 109(g)(2) because this is the meaning of "following" most commonly used. *See, e.g., In re Munkwitz*, 235 B.R. 766, 768 (E.D. Pa. 1999). But because the appropriate meaning of "following" can only be determined by the context in which the word is used, it is not helpful to consider which definition—apart from context—is most common. The decisions applying the chronological meaning of "following" do not give any reason why the context of § 109(g)(2) would support that meaning.

of curbing abusive repetitive filings by debtors attempting to nullify a stay relief order entered in a prior case by obtaining a new automatic stay upon refiling.").

This purpose will frequently not be advanced where a debtor voluntarily dismisses a case subsequent to the filing of a motion for relief from the automatic stay. If a stay relief motion has been withdrawn or denied because it was filed in error or was groundless, if years have passed between the filing of the stay motion and the voluntary dismissal, or if the creditor has already obtained the property subject to the stay, it would be of no concern to the creditor who sought stay relief that the case was voluntarily dismissed and a new case filed.  A number of the decisions that read "following" to mean "subsequent to" recognize this difficulty, and they respond to it in one of two ways.

One approach suggests that Congress intended an overbroad application of § 109(g)(2), so that bankruptcy judges would not need to determine why a debtor voluntarily dismissed a case. *See, e.g., In re Richardson*, 217 B.R. 479, 493 (Bankr. M.D. La. 1998).  The Bankruptcy Code, however, reflects no policy of avoiding judicial determinations of relevant factual issues.  Rather, the Code is grounded in a policy of affording relief to honest debtors.  *See, e.g., Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007) (stating that a fresh start for an honest debtor is "[t]he principal purpose of the Bankruptcy Code").  It would violate this basic policy to render ineligible for bankruptcy relief a debtor who has voluntarily dismissed a prior case in which stay relief was requested even though the dismissal had nothing to do with the request for stay relief.

The other approach acknowledges that it would violate the intent of § 109(g)(2) to deny eligibility in every case in which a voluntary dismissal was sought later than a request for stay relief, but this approach avoids the problem by making § 109(g)(2) discretionary, with judges able to contradict the directive of the provision if they determine that ineligibility would be unjust. *In re Beal*, 347 B.R. 87, 93 (E.D. Wis. 2006). The difficulty with this approach, as other decisions have pointed out, is that nothing in the language of § 109(g)(2) grants judicial discretion in its application. *See, e.g., In re Stuart,* 297 B.R. 665, 668 (Bankr. S.D. Ga. 2003).

The overbreadth that results from the chronological definition of "following"—and the need for judicial discretion to cure it—is eliminated if the causal definition is used. With this definition, a debtor is only ineligible for a later bankruptcy filing if the debtor voluntarily dismissed the original case as a result of the filing of a motion for relief from the automatic stay. This is precisely the abuse that the statute was intended to address, and so, in addition to being the most reasonable choice based on the statutory context, the causal definition of "following" precisely matches the statutory purpose. "Following" meaning "as a result of" is the best way to read § 109(g)(2).

*Application to the present case.*

The circumstances of Brenda Payton's bankruptcy cases make it clear that she did not seek voluntary dismissal of her first case as a result of the motion for relief from stay filed in that case. That motion had been granted, and the creditor's collateral returned, years before Payton sought dismissal; the trustee has suggested

12

no connection between the stay motion and the voluntary dismissal.  Properly interpreted, then, § 109(g)(2) did not make Payton ineligible to file a second case after the dismissal of her first case, and no reason other than ineligibility has been suggested for rejecting Payton's representation that she filed her second case in good faith.

## Conclusion

For the reasons set out above, the trustee's motion to dismiss this case on the ground of ineligibility will be denied and the debtor's motion to extend the automatic stay under § 362(c)(3) will be granted.

Dated:  November 5, 2012

_____
Eugene R. Wedoff
United States Bankruptcy Judge

13